1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16

| | |
|---|---|
| JULYUNDA DAVIS, | Case No.  1:13-cv-01185-GSA |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

17
18

**I.     INTRODUCTION**

19
20
21
22
23
24

Plaintiff Julyunda Davis ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under Title II and Title XVI of the Social Security Act.  (ECF No. 1).  The matter is pending before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

25
26
27

Plaintiff applied for Social Security benefits due to impairments which included carpal tunnel syndrome, diabetes, right knee derangement, depressive disorder, and impaired cognitive functioning.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

28

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 7 & 9).

## II.     SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS

### A.  Procedural History

On March 26, 2010, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, and, on April 8, 2010, she filed an application for supplemental security income under Title XVI of the Social Security Act. (AR 140-153).[2] Plaintiff alleged that her disability began on September 25, 2009. (AR 140). Plaintiff's initial application was denied on October 4, 2010, and her application for reconsideration was denied on January 21, 2011. (AR 63-66, 71-76). On February 1, 2011, Plaintiff requested a hearing before an Administrative Law Judge. (AR 77-78).

On March 12, 2012, a hearing took place before Administrative Law Judge Sanya Hill-Maxion ("the ALJ"). (AR 30-58). On April 2, 2012, the ALJ issued a written decision finding Plaintiff is not disabled. (AR 20-29). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on May 31, 2013. (AR 2-4).

### B.  Hearing Testimony

#### i.   Medical Expert

Dr. Chukwuemeka Efobi testified as a medical expert at the hearing. Dr. Efobi testified that Plaintiff's condition does not meet or equal any mental listing. (AR 40). Dr. Efobi found that Plaintiff was mildly limited in social functioning; mildly limited in maintaining concentration, persistence or pace; not limited in her activities of daily living; and has not had repeated episodes of decompensation of extended duration.  (AR 41). Dr. Efobi specifically testified that there was not enough evidence for him to be able to opine as to whether Plaintiff met or equaled Listing 12.05C (mental retardation); he stated that Plaintiff's seventh, eighth, and ninth grade report card was not relevant in this regard. (AR 36-39).

#### ii.  Plaintiff

Plaintiff testified at the hearing and was represented by counsel. Plaintiff attended school through the ninth grade, but dropped out during ninth grade for a reason that she does not remember. (AR 42). Plaintiff worked as a home care provider and then for approximately three

---

[2] References to the Administrative Record are designated as "AR," followed by the appropriate page number.

1   months in 2009, she worked as a babysitter. (AR 42-43). She collected unemployment and her

2   children helped her out during the times that she was not working. (AR 43).

3      Plaintiff is unable to work because of pain and swelling in both hands and her right knee.

4   (AR 43-44). Plaintiff has a shooting pain through her wrist and fingers, swelling, and numbness.

5   (AR 44). Plaintiff wears wrist braces, but she is unable to pick things up with her hands, such as

6   dishes, and she has trouble buttoning and zippering her clothing. (AR 44-45). Plaintiff wears a

7   knee brace, but she has a shooting pain in her right knee and swelling. (AR 45).  Plaintiff also

8   complained of pain in her right hip, feet, shoulders, and elbow. (AR 45). Plaintiff stated that she

9   has swelling and a burning pain in her feet when she is standing, and that she can only stand for

10  approximately ten or fifteen minutes before she has to sit. (AR 45-46). Plaintiff can walk for

11  approximately fifteen minutes before she has to sit. (AR 46). She is able to sit for about ten to

12  fifteen minutes before her knee starts to throb and she feels pressure in her hip, and has to stand

13  up. (AR 46). Plaintiff estimates that she can only lift less than five pounds. (AR 46).

14     Plaintiff lives with her daughter and her two grandchildren. (AR 47). She does not have a

15  driver's license. (AR 49). Plaintiff watches television for approximately nine hours a day. (AR

16  48). Her daughter gives her food when she comes home from work. (AR 47-48). Plaintiff puts

17  her hands in warm water, which makes them feel better. (AR 48). Plaintiff ices and heats her

18  knee. (AR 49). She spends time with her grandchildren when they get home from school. (AR

19  50). Plaintiff is unable to help with the household chores because it hurts to do anything. (AR

20  47). She is unable to do laundry or dusting. (AR 48). She is able to microwave food. (AR 48).

21  She does not do grocery shopping or any other shopping. (AR 49).

22     Plaintiff feels depressed because she is not able to do anything and she used to be a lot

23  more active. (AR 51).

### iii. Vocational Expert

25     A vocational expert (VE), Joel Greenberg, also testified at the hearing. (AR 52-57). The

26  VE classified Plaintiff's past work history from 1999 to 2008 as a home attendant, medium

27  exertional level, SVP 3, but going up to the heavy exertional level. (AR 52). The VE classified

28  Plaintiff's work history during 2009 as a babysitter, medium exertional level, and SVP 3. (AR

53). The ALJ presented a hypothetical of an individual of Plaintiff's same age, education, and work background who is able to push, pull, lift, and carry twenty pounds occasionally and ten pounds frequently; sit and stand six hours in an eight hour work day; do posturals occasionally except for frequently balance and never climb ladders, ropes, or scaffolds; has no restrictions for gross manipulative movements and can frequently do fine manipulation; must avoid concentrated exposure to hazards such as moving machinery and heights; is able to understand and remember simple one to two step tasks; is able to maintain concentration, persistence and pace for two hour increments; cannot interact appropriately with supervisors, coworkers and the general public; and cannot adapt to routine workplace changes and hazards. (AR 53). The VE opined that this individual would not be able to perform Plaintiff's past relevant work. (AR 54). However, this individual would be able to work as a small product assembler I, Dictionary of Occupational Titles (DOT) 727.687-054, light, SVP 2, with 1,400 jobs in Fresno, 20,000 jobs in California, and 230,000 jobs in the national economy and final inspector of electrical equipment, light, SVP 2, 650 jobs in Fresno, 47,000 jobs in California, and 410,000 jobs in the national economy. (AR 54)

The ALJ presented a second hypothetical of an individual who is the same as in hypothetical one, except the individual is limited occasionally with regard to bilateral gross manipulation and cannot do repetitive fine fingering and keyboarding. (AR 54-55). The VE opined that this individual would not be able to perform Plaintiff's past work. (AR 55). This individual would be able to be a callout operator, sedentary, SVP 2, with 60 jobs in Fresno, 2,500 jobs in California, and 53,000 in the national economy and a storage facility clerk, light, SVP 2, with approximately 320 jobs in Fresno, 14,000 in California, and 82,000 jobs in the national economy that fit the hypothetical. (AR 55).

The ALJ presented a third hypothetical of an individual who is the same as in hypothetical one, except the individual is able to occasionally do forceful grasping such as clenching a wrench, do frequent simple grasping and basic handling required for light work, and do frequent, but not constant, fingering with either hand. (AR 56). This individual would be able to perform the same jobs as the VE stated the person in the second hypothetical could perform.

(AR 56).

The ALJ presented a fourth hypothetical by adding additional limitations, i.e., a moderate limitation in the ability to maintain concentration, attention, persistence, and pace; a moderate limitation in the ability to adapt to changes in routine work related settings; and a moderate limitation in the ability to interact with the public, supervisors, and coworkers. (AR 57). The VE opined that an individual with these limitations could perform no work in the national or regional economy. (AR 57).

## C.  The Disability Determination Standard and Process

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. See 42 U.S.C. § 423(d)(1)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The Social Security Regulations set out a sequential five-step evaluation process to be used for evaluating a claimant's alleged disability.  20 C.F.R. § 404.1520 and 416.920; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).   The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4) and 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527, 404.1529, 416.927, and 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had

medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 25, 2009, the date specified in her application. (AR 22). Further, the ALJ identified bilateral carpal tunnel syndrome of hands and wrists, bilateral extensor tendonitis of hands and wrists, arthritis of the right knee, and a depressive disorder as severe impairments. (AR 22). The ALJ found that Plaintiff's hypertension and diabetes mellitus are well controlled. (AR 22). Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. (AR 22-23).

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that she can push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours in an eight-hour workday, sit six hours in an eight hour workday, occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and frequently balance and finger. (AR 24). In addition, the ALJ found that Plaintiff can never climb ladders, ropes, and scaffolds, engage in frequent forceful grasping (such as clenching a wrench), do frequent simple grasping or basic handling required for light work using either hand, and she must avoid concentrated exposure to hazards such as machinery, heights, etc. (AR 24). For mental RFC, Plaintiff is able to understand and remember simple one-to-two step instructions, is able to maintain concentration, persistence and pace for two-hour increments, is able to interact appropriately with supervisors, co-workers

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

1  and the public, and is able to adapt to routine workplace changes and hazards. (AR 24).

2      The ALJ found that the Plaintiff is unable to perform any past relevant work. (AR 28).

3  The ALJ found that the Plaintiff has a limited education and is able to communicate in English.

4  (AR 28). When the ALJ considered the Plaintiff's age, education, work experience, and RFC,

5  she found that there are jobs that exist in significant numbers in the national economy that the

6  Plaintiff can perform, such as a small product assembler and a final inspector of electrical

7  equipment. (AR 28-29).

8      Therefore, the ALJ concluded that Plaintiff has not been under a disability from

9  September 25, 2009, though the date of the decision. (AR 20).

10  ### III.    STANDARD OF REVIEW

11

12      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

13  whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards.

14  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499

15  F.3d 1071, 1074 (9th Cir. 2007).

16      "Substantial evidence" means more than a scintilla, but less than a preponderance.

17  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which,

18  considering the record as a whole, a reasonable person might accept as adequate to support a

19  conclusion."  Id.  Where the evidence is susceptible to more than one rational interpretation, one

20  of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Id.

21

22  ### IV.    DISCUSSION

23      #### A.  The ALJ's Evaluation of the Opinion of the Consultative Examining
             Psychologist, Dr. Martin

24      Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting

25  the opinion of Dr. Martin, the consultative examining psychologist. (ECF No. 17 at 15-17).

26  Specifically, Plaintiff argues that the ALJ did not consider Dr. Martin's moderate limitations

27  when making her RFC finding and that the VE testified that an individual with the limitations

28  assessed by Dr. Martin could not perform any work. (ECF No. 17 at 16-17). Defendant argues

that the ALJ actually gave great weight to Dr. Martin's opinion that Plaintiff had some moderate

mental limitations. (ECF No. 18 at 2). Defendant also argues that Plaintiff's RFC was consistent

with Dr. Martin's opinion as to Plaintiff's mental limitations. (ECF No. 18 at 2-4). Furthermore,

Defendant argues that the ALJ asked the VE a hypothetical that included the limitations that

Plaintiff asserts were not considered by the ALJ. (ECF No. 18 at 3).

Dr. Martin opined that Plaintiff's "overall functioning is in the borderline to low average

range." (AR 409). Dr. Martin indicated that "It is possible that the [Plaintiff's] scores are

somewhat lower due to limited educational achievement as well as style which [s]he approached

the task; [s]he had given up somewhat easily." (AR 409). Dr. Martin diagnosed Plaintiff with

pain disorder due to a medical condition, Depressive Disorder NOS, and a GAF score of 64. (AR

408).

Dr. Martin found:

> [Plaintiff] had no difficulty understanding, remembering, and
> carrying out simple instructions. [Plaintiff] had mild difficulty with
> detailed and complex instructions. [Plaintiff] had moderate
> difficulty maintaining attention and concentration for the duration
> of the evaluation. Claimant's pace was moderately decreased.
> [Plaintiff] demonstrated moderate difficulty with pace and
> persistence. The [Plaintiff] had moderate difficulty enduring the
> stress of the interview. [Plaintiff] is likely to have moderate
> difficulty adapting to changes in routine work-related settings.
> Based upon observations of current behavior and reported
> psychiatric history, the [Plaintiff's] ability to interact with the
> public, supervisors, and coworkers there appears to be moderate
> impairment.

(AR 409).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant

(examining physicians), and (3) those who neither examine nor treat the claimant (non-

examining physicians). As a general rule, more weight should be given to the opinion of a

treating source than to the opinion of doctors who do not treat the claimant. See Winans v.

Bowen, 853 F.2d 643, 647 (9th Cir. 1987). In general, a treating physician's opinion is entitled to

greater weight than that of a nontreating physician because "he is employed to cure and has a

greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53

1  F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). The opinion of an examining doctor,

2  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons

3  that are supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 831 (9th

4  Cir. 1995).

5       First, the ALJ gave great weight to Dr. Martin's opinion. (AR 27). The ALJ gave great

6  weight to the State agency consultants, including the consultative examiners, except for Dr.

7  Damayo. (AR 27-28). The ALJ translated Plaintiff's limitations, including the ones set forth by

8  Dr. Martin, into work-related restrictions and functional limitations in assessing the RFC.  The

9  ALJ determined that Plaintiff had the RFC to perform a limited range of light work.

10  Specifically, the ALJ found that the claimant is able to understand and remember simple one-two

11  step instructions; is able to maintain concentration, persistence and pace for two-hour

12  increments; is able interact appropriately with supervisors, co-workers and the public; and is able

13  to adapt to routine workplace changes and hazards.  (AR 24).

14       Plaintiff argues that the ALJ rejected Dr. Martin's opinion and that her RFC

15  determination does not encompass the limitations assessed by Dr. Martin.  The ALJ limited

16  Plaintiff to tasks requiring "simple one-two step instructions" which is consistent with Dr.

17  Martin's opinion that she "had no difficulty understanding, remembering, and carrying out

18  simple instructions."  (AR 24, 409).  Futhermore, in limiting Plaintiff to simple tasks, the ALJ

19  adequately accounted for Dr. Martin's assessment that Plaintiff had moderate limitations in

20  maintaining concentration, persistence, and pace.  Moderate limitations in the ability to maintain

21  attention, concentration, persistence, or pace over extended periods of time are compatible with

22  the ability to perform jobs involving simple tasks.[5] See Thomas v. Barnhart, 278 F.3d 947, 958

23  (9th Cir. 2002); see also Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.2008) (ALJ

24  translated claimant's condition, including pace and mental limitations, into the capability to

25  perform "simple tasks"); Bridges v. Astrue, No. 3:11-cv-06046-AC, 2012 WL 4322735, at *20

26  (D. Or. June 5, 2012), report and recommendation adopted, No. 3:11-cv-06046-AC, 2012 WL

---

27  [5] Dr. N Haroun, MD, a reviewing physician, also found that Plaintiff had moderate limitations in maintaining social
functioning and in maintaining concentration, persistence, or pace. (AR 439). Dr. Haroun found that the Plaintiff

28  was not precluded from simple repetitive tasks. (AR 441).

1    4328640 (D. Or. Sept. 19, 2012) ("It was consistent with Ninth Circuit precedent for the ALJ to

2    limit Bridges to unskilled labor as accommodation for her moderate limitations in concentration,

3    persistence, and pace).

4         Plaintiff also argues that the ALJ rejected Dr. Martin's opinion that Plaintiff has

5    "moderate difficulty adapting to changes in routine work-related settings" and moderate

6    difficulties "interact[ing] with the public, supervisors, and coworkers." Defendant argues that

7    even if the ALJ should have included such a limitation in Plaintiff's RFC, any error in failing to

8    so is harmless.

9         Although the ALJ stated in her decision that "the [Plaintiff] is able to interact

10   appropriately with supervisors, co-workers and the public [ ] and is able to adapt to routine

11   workplace changes and hazards," when the ALJ was forming the hypotheticals for the VE, she

12   included even more restrictive limitations for these factors than assessed by Dr. Martin. (AR 24,

13   52-57). For example, the first hypothetical posed to the VE, which generally mirrored the

14   Plaintiff's RFC, pertained to a hypothetical individual who could not interact appropriately with

15   supervisors, coworkers, and the general public, and could not adapt to routine workplace changes

16   and hazards.  (AR 53).  In contrast, Dr. Martin opined that Plaintiff only has moderate limitations

17   in these areas. (AR 409). The VE indicated that the hypothetical person described by the ALJ

18   would be able to work as a small product assembler I or a final inspector, electrical equipment.

19   (AR 54). When formulating the second and third hypotheticals, the ALJ varied the manipulative

20   limitations but included the same social limitations.  (AR 54)  In response, the VE opined that

21   the hypothetical individuals described could work as storage facility clerks and callout operators.

22   (AR 54-56).

23        In light of the VE's testimony that a hypothetical individual with the same general RFC

24   as Plaintiff but even more extreme social and adaptive limitations would be able to perform jobs

25   available in the national and regional economy, any error by the ALJ in failing to incorporate Dr.

26   Martin's limitations in the social functioning and adaptive areas is harmless.

27   / / /

28   / / /

10

**B. The ALJ did not err in determining that Plaintiff did not satisfy the criteria of Listing 12.05C (Mental Retardation)**

Plaintiff argues that her impaired intellectual functioning satisfies Listing 12.05C and that the ALJ made material errors in evaluating the evidence and applying the law at step three of the sequential disability analysis. (ECF No. 17 at 17-22). Plaintiff also asserts that Dr. Efobi erred when he stated that he could not render an opinion about whether Plaintiff's deficits initially manifested prior to age 22. (ECF No. 17 at 18-19). Defendant argues that the ALJ properly relied on the evidence in the record and the opinions from the consultative examining physician and State agency reviewing physicians to determine that Plaintiff did not satisfy all of the criteria for Listing 12.05C. (ECF No. 18 at 4-7).

The ALJ's relevant findings concerning Listing 12.05C at step three provide as follows:

> Dr. Efobi testified that there is insufficient evidence for him to give his opinion about listing 12.05 (as asserted by the representative) because there are no psychological evaluations or IQ tests pre-dating age 22 of the claimant. Dr. Efobi noted that the report card of the claimant is not sufficient evidence for such a determination and I conclude that the claimant has not successfully demonstrated enough evidence to substantiate a determination of listing 12.05 (Exhibit 18E).

(AR 24).

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183–84 (9th Cir.1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.1985). It is the disability claimant's burden to prove that his or her impairments meet or equal the required elements of a listing. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

Listing 12.05 (mental retardation) "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, with evidence that supports onset of the impairment before age 22." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The required level of severity, as relevant here, is met by "[a] valid verbal,

1  performance, or full scale IQ of 60 through 70 and a physical or other mental impairment

2  imposing an additional and significant work-related limitation of function." Id.

3      When Plaintiff was 46 years old, she was examined by Dr. Martin, who indicated that she

4  had a Full Scale IQ of 65.  (AR 407). The ALJ did not determine whether Plaintiff's IQ score of

5  65 is invalid; thus, for the purposes of this analysis, the Court will assume that it is a valid score.

6  Therefore, the Plaintiff meets the first requirement under Listing 12.05C.

7      At step two of the sequential evaluation, the ALJ also found that Plaintiff has the

8  following severe impairments: bilateral carpal tunnel syndrome of hands and wrists; bilateral

9  extensor tendonitis of hands and wrists; arthritis of the right knee; and a depressive disorder,

10  NOS. (AR 22). This finding meets the second requirement under Listing 12.05C. See Fanning v.

11  Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (impairment imposing additional and significant

12  work-related limitation of function met if additional impairment's effect on plaintiff's ability to

13  perform basic work activities is more than slight or minimal).

14      However, Plaintiff must also demonstrate that she fulfills the diagnostic description

15  specified in the listing, i.e., significant subaverage general intellectual functioning with deficits

16  in adaptive functioning initially manifested during the developmental period. The only evidence

17  that Plaintiff presented in support of her position that she manifested deficits in adaptive

18  functioning during the developmental period were two pages of school records and Plaintiff's

19  testimony that she dropped out of school in the ninth grade. (AR 42, 313-314). Plaintiff

20  presented a school record from the Hanford Elementary School District that stated that she

21  completed first through sixth grades in six years. (AR 313). Plaintiff also presented a report card

22  for grades seven through nine, but the report card is illegible for the first semester of eighth

23  grade. (AR 314). In seventh grade, Plaintiff received a mix of Bs, Cs, Ds, and Fs. (AR 314). It is

24  unclear whether Plaintiff received a B or a D in Homemaking and Math for the first semester of

25  seventh grade. (AR 314). Plaintiff received a B in Art/Music, a C in Geography and Physical

26  Education for the first semester of seventh grade. (AR 314). Plaintiff received a C in art/music,

27  geography, physical education, and English, and an F in homemaking and math for the second

28  semester of seventh grade. (AR 314). In the second semester of eighth grade and both semesters

1   of ninth grade, it appears that Plaintiff received all Fs. (AR 314). The school records do not

2   indicate that Plaintiff attended special education classes. (AR 313-314).

3       Petitioner argues that the instant case is analogous to Gomez v. Astrue, 695 F.Supp. 2d

4   1049, 1057-60 (C.D. Cal. Feb. 10, 2010). However, in Gomez, the school records that the

5   plaintiff presented to the Appeals Council were much more detailed than the two pages of

6   records that the Plaintiff presented here to the ALJ. Id. In Gomez, the plaintiff's school records

7   included statements about the plaintiff's progress in subject areas like reading and math for first

8   through sixth grades and Wide Range Achievement Test results from fourth and fifth grade. Id.

9       Therefore, the school records that Plaintiff presented, Plaintiff's testimony that she

10  dropped out of school in the ninth grade, and the ambiguous evidence concerning whether

11  Plaintiff attended special education classes (see below) is insufficient to permit an inference that

12  her intellectual functioning deficits had an onset date during the developmental period. When the

13  evidence is susceptible to more than one rational interpretation, the ALJ's conclusion, if

14  reasonable, must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Therefore, the

15  ALJ's conclusion that Plaintiff did not meet Listing 12.05C will be upheld.

16
17        **C.  The ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's testimony**

18      Plaintiff also argues that the ALJ's adverse credibility determination is improper and not

19  supported by substantial evidence. (ECF No. 17 at 23-26). Defendant counters that the ALJ

20  properly determined that Plaintiff was not credible because she provided clear and convincing

21  reasons, supported by substantial evidence in the record, for her credibility determination. (ECF

22  No. 18 at 7-10).

23      When evaluating the credibility of a claimant's testimony regarding subjective

24  complaints of pain and other symptoms, an ALJ must engage in a two-step analysis.  Molina v.

25  Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has

26  presented objective medical evidence of an underlying impairment which could reasonably be

27  expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028,

28  1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the

1   claimant to show that his impairment could be expected to cause the severity of the symptoms

2   that are alleged, but only that it reasonably could have caused some degree of symptoms.

3   Smolen, 80 F.3d at 1282.

4          If the first test is met and there is no evidence of malingering, the ALJ can only reject the

5   claimant's testimony regarding the severity of his symptoms by offering "clear and convincing

6   reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social Security, 533

7   F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this

8   conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude

9   the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

10  the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal

11  punctuation and citations omitted).

12         Factors that may be considered in assessing a claimant's subjective pain and symptom

13  testimony include the claimant's daily activities; the location, duration, intensity and frequency

14  of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

15  effectiveness or side effects of any medication; other measures or treatment used for relief;

16  functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at

17  958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques

18  of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

19  concerning the symptoms, and other testimony by the claimant that appears less than candid;

20  [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

21  prescribed course of treatment. . . ."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

22  (quoting Smolen, 80 F.3d at 1284). Other factors the ALJ may consider include a claimant's

23  work record and testimony from physicians and third parties concerning the nature, severity, and

24  effect of the symptoms of which he complains. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792

25  (9th Cir. 1997).

26         Initially, the ALJ found that Plaintiff had severe impairments that could be expected to

27  cause some of the alleged symptoms. (AR 25). However, the ALJ found that the "[Plaintiff's]

28  statements concerning the intensity, persistence and limiting effects of these symptoms are not

1  credible to the extent they are inconsistent with the above residual functional capacity

2  assessment." (AR 25).

3          The reasons that the ALJ cites for finding Plaintiff not credible appear to be specific,

4  clear, and convincing. First, the ALJ states that Plaintiff's statements are inconsistent with the

5  medical evidence in the record. (AR 25). The ALJ summarizes the medical evidence in the

6  record and points to instances in which the medical evidence did not support Plaintiff's claims,

7  including Plaintiff's claim of right knee pain that did not allow her to stand, sit, or walk for more

8  than 15 minutes at a time. (AR 23-27). While Plaintiff complained of disabling knee pain, the

9  record shows that Plaintiff's x-ray in January 2010 was unremarkable. (AR 503). In a progress

10 note from Community Health Centers dated October 15, 2009, Plaintiff stated that she had a

11 negative x-ray, but she was told that she had a ligament tear. (AR 387). However, there is no

12 proof in the record that Plaintiff has a ligament tear. Also, there are no MRI studies in the record.

13         Second, the ALJ found that the Plaintiff was not credible because:

14              In order to assess the credibility of the claimant's allegations of
               excess pain and dysfunction, I must consider her allegations in
15             light of certain credibility factors as set forth in the regulations,
               including the claimant's daily activities, the location, duration,
16             frequency, and intensity of the pain or other symptoms and other
               factors concerning the [Plaintiff's] functional limitations and
17             restrictions due to pain or other symptoms (20 CFR 404.1529 and
               416.929). The [Plaintiff] has misrepresented the diagnoses of her
18             impairments to treating medical personnel (Exhibits 7F, 21F, and
               22F), her education (Exhibits 2E/7; 9F; 18E and testimony), and
19             her mental abilities (Exhibits 4E, 9E, 4F, and 9F). Although the
               inconsistent information provided by the [Plaintiff] may not be the
20             result of a conscious intention to mislead, nevertheless the
               inconsistencies suggest that the information provided by the
21             claimant generally may not be entirely reliable.

22 (AR 27).

23         Upon a review of the record, and specifically the sections of the record that the ALJ

24 mentioned at AR 27, the Court notes that there were inconsistencies in Plaintiff's statements to

25 medical personnel, her function reports, and her testimony at the hearing that support the ALJ's

26 second reason for finding the Plaintiff not credible. The ALJ makes specific references to the

27 record as to inconsistencies in Plaintiff's statements to medical personnel, in her benefits

28 application, and at the hearing. (AR 23, 25, 26). For example, in her function report dated June

15, 2010, the Plaintiff claimed that she could not dress, bathe, use the toilet, and care for her hair due to her problems with her hands and knees. (AR 269). However, Plaintiff told Dr. Martin on July 22, 2010, that she could prepare simple meals, do household chores, make change at the store, and utilize public transportation. (AR 407). In the June 15, 2010, function report, Plaintiff claimed that she could only walk a few feet before she needed to rest. (AR 273). However, the ALJ noted Dr. Simmonds's observation that Plaintiff was able to move about the office freely, without any assistance, and was able to get onto and off the examination table without any assistance or difficulty. (AR 402). Plaintiff misrepresented her condition to her treating medical personnel when she appeared at her physical therapy appointment on July 21, 2010, wearing bilateral wrist braces, a right knee brace, and using crutches. (AR 483). However, the next day, Plaintiff appeared for her orthopedic examination, and her gait was normal, she walked without any assistive devices, and her straight leg raising test was negative. (AR 26-27, 402).

Plaintiff also made inconsistent statements on her applications and in her testimony about her education.[6] Plaintiff testified at the hearing that she only completed eighth grade, but she stated on her applications and during her examination with Dr. Martin that she completed ninth grade. (AR 42, 221, 253, 406). Plaintiff told Dr. Martin that she had been placed in special education classes, but on her application she denied attending special education classes, and she testified at the hearing that she was unsure. (AR 27, 50, 406). The school records that Plaintiff provided to the ALJ do not show that she attended special education classes. (AR 313-314).

Therefore, the ALJ provided "clear and convincing reasons" supported by substantial evidence in the record to question the reliability of Plaintiff's claims and find that Plaintiff's subjective symptoms were not as limiting as she claimed.

### D.  ALJ properly rejected the lay statements of Plaintiff's daughter

Plaintiff argues that the ALJ improperly addressed the statements of Plaintiff's daughter, Kenya Curry. (ECF No. 17 at 26-28). Defendant counters that the ALJ properly rejected the Plaintiff's daughter's statements because the statements were inconsistent with Plaintiff's own

---

[6] The Court notes that even if Plaintiff's statements about her education are not inconsistent enough to support a finding that Plaintiff is not credible, the other inconsistencies cited by the ALJ and mentioned in this decision provide adequate support for the ALJ's decision in finding the Plaintiff not credible.

1  statements. (ECF No. 18 at 10-12).

2  "In determining whether a claimant is disabled, an ALJ must consider lay witness

3  testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Sec. Admin.,

4  454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4). "Lay witness testimony is

5  competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d

6  1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).

7  The ALJ must give specific reasons germane to the witness in discounting the lay witness

8  testimony. Stout, 454 F.3d at 1056. If the ALJ gives reasons for rejecting the claimant's

9  testimony that are equally relevant to similar testimony provided by lay witnesses, that would

10  support a finding that the lay witness testimony is similarly not credible. Molina v. Astrue, 674

11  F.3d 1104, 1114 (9th Cir. 2012).

12  The ALJ considered Ms. Curry's report of Plaintiff's activities and that her condition

13  affects certain activities and found that:

14  > Kenya Curry, the [Plaintiff's] daughter, wrote that the [Plaintiff]
> watches television all day while the other housemates help with the
15  > daily routines, including the [Plaintiff's] dressing, bathing, care for
> hair, using the toilet, house and yard work, yet the [Plaintiff] can
16  > count change, pay bills, and walk a few feet before she must rest
> (Exhibit 8E and repeated at 10E). I assign the opinion of Ms.
17  > Curry no weight because it is contrary to the [Plaintiff's] own
> statements and admissions contained herein.

18

19  (AR 25).

20  Ms. Curry completed both the third-party function report and Plaintiff's function report.

21  (AR 260-267, 268-275). Although there are similarities between the two forms, Ms. Curry's

22  statements are inconsistent with statements that Plaintiff made at the hearing and to the

23  consultative medical examiner. (AR 269, 407). Plaintiff told Dr. Martin that she was independent

24  in her personal care, could perform chores, run errands, and use public transportation. (AR 407).

25  During the hearing, Plaintiff testified that she tried to do chores around the house and that she

26  sometimes had trouble with zippers and buttons. (AR 44-45, 48). However, Ms. Curry wrote in

27  her third party function report that Plaintiff is unable to get dressed due to her hands and knees,

28  unable to bathe, unable to use the toilet, and unable to care for her hair. (AR 261). Ms. Curry

1   also wrote that Plaintiff does not do any household chores. (AR 262). These inconsistencies

2   between Ms. Curry's statements in the third party function report and the Plaintiff's own

3   statements to Dr. Martin and at the hearing support the ALJ's decision to discredit Ms. Curry's

4   lay witness evidence.

5       Therefore, the ALJ provided a specific reason germane to the witness to discount her

6   testimony regarding Plaintiff's limitations.

7                    **E.  The ALJ properly considered Plaintiff's literacy at step 5**

8       Plaintiff argues that the ALJ did not provide reasons for rejecting the evidence of

9   Plaintiff's illiteracy. (ECF No. 17 at 28-29). Plaintiff asserts that the ALJ failed to fully and

10  fairly develop the record by determining the extent of Plaintiff's inability to read and write. (ECF

11  No. 19 at 8-9). Defendant counters that Plaintiff presented no objective or reliable evidence of

12  illiteracy. (ECF No. 18 at 12). In the present case, the ALJ found that the Plaintiff has a limited

13  education and is able to communicate in English. (AR 28).

14      The Commissioner bears the burden at step five of the sequential process to prove that a

15  claimant can perform other work in the national economy, given the claimant's RFC, age,

16  education, and work experience. See Silveira v. Apfel, 204 F.3d 1257, 1261 n. 14 (9th Cir.

17  2000). Every job in the economy requires basic literacy, which is defined as a vocabulary of

18  2,500 words, the ability to read about 100 words a minute, and the ability to print simple

19  sentences. See Donahue v. Barnhardt, 279 F.3d 441, 445 (7th Cir. 2002). The Social Security

20  Administration has six different categories used to assess a claimant's education level: (1)

21  illiteracy; (2) marginal education; (3) limited education; (4) high school education and above; (5)

22  inability to communicate in English; and (6) other. 20 C.F.R. §§ 404.1564(b), 416.964(b).

23      The Social Security regulations define illiteracy as an inability to "read and write a

24  simple message such as instructions or inventory lists even though the person can sign his or her

25  name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §

26  404.1564(b)(1), 416.964(a)(1). Marginal education is defined as the "ability in reasoning,

27  arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We

28  generally consider that formal schooling at a 6th grade level or less is a marginal education." 20

1   C.F.R. § 404.1564(b)(2), 416.964(a)(2). Limited education is a step above marginal education

2   and is the "ability in reasoning, arithmetic, and language skills, but not enough to allow a person

3   with these educational qualifications to do most of the more complex job duties needed in semi-

4   skilled or skilled jobs. We generally consider that a 7th grade through 11th grade level of formal

5   education is a limited education." 20 C.F.R. § 404.1564(b)(3), 416.964(b)(3). A numerical grade

6   level is only used to determine educational abilities if there is no other evidence to contradict it.

7   20 C.F.R. § 416.964(b).

8          There is no dispute that Plaintiff completed the eighth grade, which would generally be a

9   limited education. (AR 50-51, 314). Plaintiff testified that she completed the eighth grade and

10  dropped out of school during the ninth grade.  (AR 50-51).  Plaintiff's report card from seventh

11  through ninth grade reveals that she attended ninth grade, but received all Fs. (AR 314). The

12  copy of Plaintiff's report card in the record is partially illegible and it is not clear whether she

13  passed any of her eighth grade classes. (AR 314). In seventh grade, Plaintiff received a mix of

14  Bs, Cs, Ds, and Fs, including Cs in English both semesters. (AR 314). A letter from the Hanford

15  School District states that Plaintiff completed first through sixth grades in six consecutive years.

16  (AR 313). In sum, Plaintiff completed the eighth grade, and completed and passed some of her

17  classes in the seventh grade. (AR 313-314). Plaintiff's school records do not indicate that she

18  was placed in special education classes. (AR 313-314). Therefore, Plaintiff had a seventh or

19  eighth grade education, which is consistent with the ALJ's finding that Plaintiff had a limited

20  education pursuant to 20 C.F.R. § 404.1564(b)(3), 416.964(b)(3).

21         However, Plaintiff argues that the ALJ did not consider the evidence in the record that

22  she is illiterate. (ECF No. 17 at 22-23). Specifically, Plaintiff argues that the ALJ should have

23  considered that Plaintiff was unable to fill out her disability forms herself, that Dr. Richard

24  Engeln found that Plaintiff tested at the beginning preschool level for reading, and that none of

25  Plaintiff's activities or jobs required writing. (ECF No. 17 at 22-23).

26         In her decision, the ALJ rejected Plaintiff's preschool level reading results in light of the

27  fact that Plaintiff refused to cooperate with Dr. Engeln, had exhibited malingering during the

28  examination, and did not fully describe details of Plaintiff's situation and abilities. (AR 23, 345-

347). Dr. Engeln conducted a psychological examination on October 31, 2008. (AR 344-348). Dr. Engeln noted that when speaking to Plaintiff, he was able to easily understand Plaintiff's verbal expressions and they were appropriate in form and association. (AR 345). Dr. Engeln found that Plaintiff's reading, spelling, and arithmetic tested at beginning preschool level. (AR 346). However, Dr. Engeln found that Plaintiff "was unwilling to demonstrate her full array of competency," the "obtained measurements are not valid measurements of ability, but instead, reflect attitudinal-emotional issues," and Plaintiff's "response to the Rey [15 Item Memory Test] was positive for malingering." (AR 346). Contrary to Plaintiff's contention, Plaintiff's malingering on the Rey Memory Test was not the only reason for discounting the results of her academic skills tests. (AR 345-346). Dr. Engeln also doubted the results of Plaintiff's tests because she did not exhibit her full array of competency and because of Plaintiff's attitude toward the tests. (AR 346).

Although Dr. Engeln opined that "because of [Plaintiff's] exaggeration, [he] was unable to say what her abilities actually are," he found that verbally, cognitively, and socially Plaintiff is capable of entry level jobs with simple, unidimensional instructions and normal supervision. (AR 347). Therefore, the ALJ provided reasons that are supported by the evidence in the record for rejecting Plaintiff's preschool reading level test results. (AR 23, 313, 314, 346).

Plaintiff argues that the fact that she was unable to fill out her function report is proof that she is illiterate. However, as discussed above, the ALJ provided "clear and convincing reasons" supported by substantial evidence in the record to question the reliability of Plaintiff's claims.[7] In addition, the fact that Plaintiff's past employment and activities did not involve writing is not indicative that Plaintiff did not possess the ability to write.

Furthermore, there was other evidence in the record that Plaintiff could read, write, and communicate in English. In her interview for her disability report for her prior application, Plaintiff indicated that she could speak and understand English, but that she could not read and understand English or write more than her name in English. (AR 215). However, in her interview

---

[7] Although the ALJ incorrectly noted that Plaintiff understood the disability form in 2010, the ALJ provided many other clear and convincing reasons to question the reliability of Plaintiff's claims.

for her disability report for the current application, Plaintiff indicated that she could understand, read, and write English. (AR 251). As part of the disability report, the interviewer was asked to check various items to indicate if "any difficulty was observed." (AR 213, 249). The interviewer could have answered "Yes," "No," or "Not observed/perceived." (AR 249). The interviewer wrote "No" for hearing, reading, talking, and answering. (AR 249). The interviewer did indicate "Yes" for other areas such as sitting, standing, and walking, so the interviewer did evaluate Plaintiff's ability in each area. (AR 213, 249). Plaintiff exhibited her ability to understand questions and offer explanations during the hearing. (AR 30-58). As previously stated, Plaintiff received Cs in both semesters of seventh grade English. (AR 314).

Therefore, there was a sufficient basis for the ALJ to discredit the evidence in the record that suggested that Plaintiff is illiterate. Although there is some evidence in the record suggesting that Plaintiff might be illiterate, there is substantial evidence in the record to support the ALJ's determination that Plaintiff was literate. Even assuming that there was insufficient evidence for a limited education finding, there was substantial evidence in the record to support a finding that Plaintiff has a marginal education level and is literate.

**F.  The ALJ properly evaluated the opinions of Drs. Simmonds and Kalmar**

Plaintiff argues that the ALJ failed to provide reasons for not including some of the limitations assessed by Drs. Simmonds and Kalmar in her RFC determination. (ECF No. 17 at 29-30). Specifically, Plaintiff contends that Dr. Simmonds opined that Plaintiff was limited to frequent fine manipulation and occasional agility and that Dr. Kalmar opined that Plaintiff should never perform fine fingering and keyboarding and was limited to occasional bilateral gross manipulation, but the ALJ did not include these in her RFC or explain why she was rejecting them. (ECF No. 17 at 30). Defendant argues that the ALJ actually adopted Dr. Simmonds's restriction as to frequent fine manipulations. (ECF No. 18 at 13). Defendant concedes that the ALJ did not adopt Dr. Kalmar's limitation against repetitive fine fingering and keyboarding, but asserts that the ALJ provided specific and legitimate reasons for giving greater weight to Dr. Reddy instead of Dr. Kalmar. (ECF No. 18 at 13-14).

Dr. Simmonds found that Plaintiff can perform gross manipulative movements without

1   restrictions and fine manipulations on a frequent basis. (AR 404). Dr. Simmonds found that

2   Plaintiff can occasionally perform agility, i.e., walking on uneven terrain, climbing ladders, or

3   working at heights. (AR 404). In her RFC, the ALJ found that Plaintiff can frequently balance

4   and finger. (AR 24). The ALJ also found that Plaintiff must avoid concentrated exposure to

5   hazards such as moving machinery, heights, etc. (AR 24). Therefore, the ALJ adopted Dr.

6   Simmonds's restriction as to frequent fine manipulations as part of the RFC. (AR 24, 26-27,

7   404). Similarly, the ALJ's RFC determination included restrictions on climbing and on

8   avoidance of heights, which is consistent, indeed even more restrictive, than Dr. Simmonds's

9   agility restrictions. To the extent that the ALJ failed to include Dr. Simmonds's limitation to

10  occasional walking on uneven ground in the RFC, it is harmless error. The VE opined that a

11  hypothetical individual with Plaintiff's limitations could work as a small products assembler and

12  a final inspector of electrical equipment, which both do not reference walking on uneven ground

13  as a part of the job description and requirements. DOT No. 706.684-011, 1991 WL 679050;

14  DOT 727.687-054, 1991 WL 679672.

15        Dr. F. Kalmar, MD, a non-examining State agency reviewing physician, found that

16  Plaintiff is limited in handling (gross manipulation) and fingering (fine manipulation). (AR 412).

17  Specifically, Dr. Kalmar found that Plaintiff cannot perform repetitive fine fingering and

18  keyboarding and that Plaintiff can only occasionally perform gross manipulation. (AR 412).

19        Dr. S. Reddy, MD, also assessed certain limitations in handling (gross manipulation) and

20  fingering (fine manipulation). (AR 457). Specifically, Dr. Reddy found that Plaintiff (1) cannot

21  perform frequent forceful grasping such as clenching a wrench; (2) is able to perform frequent

22  simple grasping and basic handling required for light work using either hand; and (3) is able to

23  perform frequent but not constant fingering using either hand. (AR 457).

24        The ALJ's RFC was consistent with Dr. Reddy's opinion. The ALJ noted Dr. Reddy's

25  observation that Plaintiff did not make good effort on grip strength testing during Plaintiff's

26  examination with Dr. Simmonds. Plaintiff's effort during this testing was inconsistent with her

27  activities of daily living, including cooking meals and doing household chores. (AR 27, 459).

28  The ALJ noted that Dr. Reddy concluded that Plaintiff could engage in limited forceful grasping

1  as well as frequent simple grasping, handling, and fingering required for light work using either

2  hand. (AR 27).  The ALJ rejected Dr. Kalmar's opinion in light of Dr. Reddy's analysis that

3  Plaintiff did not put full efforts into the grip strength testing reflected in the record.  (AR 27).

4  The ALJ's reason for rejecting Dr. Kalmar's opinion is specific and legitimate and is supported

5  by substantial evidence.

6          Furthermore, the ALJ's ultimate nondisability finding would remain unchanged even if

7  the ALJ had credited Dr. Kalmar opinion that Plaintiff was limited to occasional gross

8  manipulation and no repetitive fine fingering and keyboarding.  The ALJ posed a hypothetical

9  question to the VE that added limitations of occasional gross manipulation and no repetitive fine

10 fingering and keyboarding to the initial hypothetical reflecting Plaintiff's RFC.  The VE found

11 that a hypothetical individual with these limitations could work as a call out operator or storage

12 facility clerk. (AR 54-55).   Therefore, any error in the ALJ's evaluation of Dr. Kalmar's opinion

13 is harmless.

14 **V.      CONCLUSION AND ORDER**

15

16         Based upon the foregoing, the Court finds that the ALJ's decision is supported by

17 substantial evidence in the record as a whole and is based on proper legal standards.

18 Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

19 Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor

20 of Defendant, Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff,

21 Julyunda Davis.

22
   IT IS SO ORDERED.
23

24    Dated:  __**April 3, 2015**__          _____**/s/ Gary S. Austin**_____
                                             UNITED STATES MAGISTRATE JUDGE
25

26

27

28